## KENNEDY MINING AND MILLING COMPANY v. ARGONAUT MINING COMPANY.

ERROR TO THE SUPREME COURT OF THE STATE OF CALIFORNIA.

No. 49.  Argued December 10, 11, 1902.—Decided March 9, 1903.

Where the contention is that the title to ore taken from a mine depends upon whether the mine was patented under the act of July 26, 1866, or the act of May 10, 1872, and involves the effect of the want of parallelism of the end lines of the location, a Federal question is so presented that this court has jurisdiction.

Where, as the result of an adverse proceeding in the land office and a compromise agreement entered into by applicants for patents for mining claims on the same lode, a common end line crossing the lode at right angles was established and patents were issued according to the adjustment, this fixed the rights of the parties in length on the lode and the extra-lateral right as-between them; and estopped each and its successors from asserting the right to ore body extracted from the vein within the end line of the other.

THIS was an action for damages for the value of ore alleged to have been taken by the Kennedy Mining and Milling Company from ground belonging to the Argonaut Mining Company, situated in Amador County, California. The Kennedy Mining and Milling Company denied taking any ore or gold-bearing rock which was the property of the Argonaut Mining Company, and averred that it was the owner of the vein or lode from which the rock was taken. The case was

submitted to the trial court on an agreed statement of facts, and resulted in a judgment in plaintiff's favor, which judgment was affirmed by the Supreme Court of California. 131 California, 15. Writ of error was then allowed, and each party docketed the case in this court, but the record was only printed in No. 49.

The parties are co-terminous mining proprietors upon the same vein or lode, the top or apex of which passes through the Pioneer location, belonging to the Argonaut Company, into the Kennedy location, belonging to the Kennedy Mining and Milling Company.

A certain map of the Pioneer and Kennedy mining claims was made part of the findings of fact, but the Supreme Court of California made use of a diagram simplified from that exhibit, which is as follows:

The common boundary is the line A–B, crossing the lode at the point marked 1 on this diagram. The line A–B–B' is

the end line produced indefinitely in the direction of the dip or downward course of the vein.

The Kennedy mine was entered, and payment made in November, 1871, and the patent was issued July 29, 1872.

The Pioneer was located under the law of 1866; on February 23, 1872, it was entered and paid for; and the patent was dated August 12, 1872.

During the pendency of the patent proceedings a conflict arose as to a segment of ground lying at the north end of the Pioneer, and at the south end of the Kennedy. This controversy was subsequently adjusted by an agreement between the then owners of the two properties. Both parties had sunk working shafts, the openings of which did not start at the apex, but each intersected the vein, and all the workings of both were on this vein. The vein on its downward course passed underneath the Silva mining claim belonging to the Kennedy Mining and Milling Company, located and patented on another vein, which had its apex within the Silva ground. This Silva ground was patented to the Kennedy Mining and Milling Company, February 6, 1893, and the patent recited an entry made in October, 1892.

The patent contained this reservation: "That the premises hereby granted, with the exception of the surface, may be entered by the proprietor of any other vein, lode or ledge, the top or apex of which lies outside of the boundary of said granted premises, should the same in its dip be found to penetrate, intersect or extend into said premises, for the purpose of extracting and removing the ore from such other vein, lode or ledge."

The ore in dispute, although taken from the Pioneer-Kennedy vein, was south of the Kennedy south end boundary, as shown by its patent, and the Kennedy Mining and Milling Company did not assert any right to it by virtue of its ownership of the Kennedy mine. The ore though taken from beneath the surface of the Silva location was taken from the discovery lode of the Pioneer location, which was the only lode that had its apex within that location. It entered the location near the middle point of the southern end line, and ran northerly through the

location in a direction practically parallel to the side lines, through the center of the northern end line.

Plaintiff in error admitted the ownership by the Argonaut Mining Company of the Pioneer mine, and that the lode had its apex within its surface location, but denied that the quartz taken by it from that lode was within that location, on the ground that because of non-parallelism of the end lines of the Pioneer, it carried no extra-lateral rights; and that if the court could as matter of law construct for it parallel end lines, the southerly end line being the base line from which the location was projected, the parallel would be made by extending the northern end line in a direction parallel to the direction of the southerly end line.

The Supreme Court of California held that the Argonaut Company was entitled to all the rights which would attach under the act of 1866, and to any additional rights which inured under the act of 1872; that the act of 1866 did not require parallel end lines, and the failure to so parallel them in the Pioneer location did not deprive that claim of extra-lateral rights; that the extra-lateral rights on lodes located under the act of 1866, where end lines were not parallel, were to be defined by drawing lines at right angles to the general course of the lode, at the extreme points of the lode within the location; that the contention of plaintiff in error, that because the description in the Pioneer patent commenced at the south end of the claim, and the south end line was first run, the inequalities arising through diverging end lines should be adjusted by drawing a produced line from 1 to 6 in the diagram, parallel to the produced south end line from 3 to 5 in the diagram, could not be sustained.

The ore bodies in controversy were south of the northern end line plane of the Pioneer as made by agreement the boundary line between it and the Kennedy mining claim, and also within the extra-lateral right planes constructed at right angles to the general course of the lode through the extreme points of the lode within the location.

The act of July 26, 1866, 14 Stat. 251, c. 262, provided that patentees thereunder should have " the right to follow such vein

or lode with its dips, angles, and variations, to any depth, although it may enter the land adjoining, which land adjoining shall be sold subject to this condition."

The act of May 10, 1872, 17 Stat. 91, c. 152, §§ 2, 3, provided that the end lines of each claim should be parallel to each other, and that locators should have " the exclusive right of possession and enjoyment of all the surface included within the lines of their locations, and of all veins, lodes, and ledges throughout their entire depth, the top or apex of which lies inside of such surface lines extended downward vertically, although such veins, lodes, or ledges may so far depart from a perpendicular in their course downward as to extend outside the vertical side lines of said surface locations : *Provided*, That their right of possession to such outside parts of said veins or ledges shall be confined to such portions thereof as lie between vertical planes drawn downward as aforesaid, through the end lines of their locations, so continued in their own direction that such planes will intersect such exterior parts of said veins or ledges."

*Mr. John Malmesbury Wright* and *Mr. John Garber* for plaintiff in error. *Mr. Byron Waters* was with them on the brief.

*Mr. Curtis H. Lindley* for defendant in error. *Mr. Henry Eickhoff* was with him on the brief.

Mr. CHIEF JUSTICE FULLER, after making the foregoing statement, delivered the opinion of the court.

Plaintiff in error contended in the courts below that, by force of sections 2 and 3 of the act of Congress of May 10, 1872, title to the ore in question passed to it through its patent to the Silva mine, and did not pass to the Pioneer through its patent because the end lines of the latter were not parallel to each other.

The defendant in error contended that its title was not acquired under the act of 1872, but under the act of July 26, 1866, which did not require parallelism of end lines.

In these circumstances it is held by a majority of the court that a Federal question was so presented that we have jurisdiction.

It was stated in the agreed statement of facts that the Kennedy Mining Company on October 13, 1870, filed its application for patent in the United States land office at Sacramento, California, and that a diagram of the premises for which patent was applied for was posted in that land office October 15, 1870; that on January 13, 1871, the Pioneer Gold and Silver Mining Company, the immediate predecessor in title of the Argonaut Company, filed its application for patent in the same land office, and a diagram of the ground it claimed, and for which patent was sought, was posted in the office of the register of the land office, and upon the claim; that there was a surface conflict as to area claimed by the respective applicants for patent, as shown by the proceedings in the land office, the conflict occurring on the northern end of the Pioneer mine as applied for, and the southern end of the Kennedy mine as applied for; that on said January 13 the register and receiver of the land office made and entered an order in respect of the adverse claim of the Pioneer, directing proceedings in the case of the Kennedy Mining Company to be suspended so far as affecting the piece or parcel of land described in the order; that on February 20, 1871, the Pioneer Gold and Silver Mining Company and the Kennedy Mining Company entered into a compromise agreement, in which each of the parties withdrew from their applications their claim to a certain portion of the surface ground in dispute; and which provided that "the dividing line between the claims of the respective companies shall be one drawn at right angles with the general course of the lode or lead, and surface ground thereto appurtenant, and at the point hereinbefore designated." The line thus agreed upon was the line from A to B in the foregoing diagram. Thereafter surveys for the patent for the Kennedy mine and for the Pioneer mine were duly made, and patent was issued to the Kennedy Mining Company, July 29, 1872, and to the Pioneer Gold and Silver Mining Company, August 12, 1872. The Argonaut Company became the owner of the Pioneer mine, July 3, 1893, by a deed from the Pioneer Gold and Silver Mining Company, and the Kennedy Mining and Milling Company became the owner of the Kennedy mine by conveyance from the Kennedy Mining Company,

dated December 25, 1886. The Kennedy Mining and Milling Company became the owner of the Silva quartz mine, February 6, 1893, by a patent issued to it on that day, which recited that that company on February 13, 1892, duly entered and paid for the mining claim or premises known as the Silva quartz lode mining claim.

It thus appears that a common end line was established by the patent surveys, which described this line as crossing the lode, and that the Kennedy Mining and Milling Company purchased with the knowledge that this was a common boundary established as such by the patents many years prior to its purchase. The common boundary A B, crossing the lode, was fixed as the result of an adverse proceeding in the land office, and the agreement entered into with respect thereof was as set forth in the agreed statement of facts.

We think, then, that the Kennedy Mining and Milling Company is estopped from asserting any right to the ore body in dispute, which it was also agreed was extracted by the Kennedy Mining and Milling Company from the vein south of the vertical plane drawn through the line A B produced in the direction B', and which was the same vein which had its top or apex in the Kennedy quartz mine, and in the Pioneer quartz mine, and was continuous from the apex of both properties downward to the lowest depths. The boundary line agreed on fixed the rights of the parties in length on the lode, and so involved the extra-lateral right as between them.

The Argonaut Mining Company and the Kennedy Mining and Milling Company succeeded to the interests of the Pioneer Company and the original Kennedy Company, with a knowledge of the boundary line so determined, and both parties were concluded by it and the results following therefrom. *Richmond Mining Company* v. *Eureka Mining Company*, 103 U. S. 839, 846.

Apart from the questions discussed by the Supreme Court of California, we are of opinion that the judgment must be affirmed on the foregoing ground.

*Judgment affirmed.*

Mr. Justice White and Mr. Justice McKenna dissented.